Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OLATUNBOSUN GRACE OJO,**<br><br>Plaintiff,<br><br>v.<br><br>**JOSIE CHARLES, *et al.*,**<br><br>Defendants. | **Civil Action No.: 23-22808 (ES) (AME)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court are defendants David B. Joyandeh, Esq., Buckalew, Frizzell & Crevina LLP, and BCAP Build America Association Corp.'s[1] motions to dismiss (D.E. Nos. 10 & 27) *pro se* plaintiff Olatunbosun Grace Ojo's ("Plaintiff") complaint (D.E. No. 1 ("Complaint" or "Compl.")), and Plaintiff's motion for a preliminary injunction (D.E. No. 22).[2] Having considered the parties' submissions, the Court decides these motions without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **GRANTS** the Moving Defendants' motions to dismiss the Complaint and **DENIES** Plaintiff's motion for a preliminary injunction.

---

[1] The Court refers to the defendants as follows: David B. Joyandeh, Esq. ("Joyandeh"), Buckalew, Frizzell & Crevina LLP ("BFC," and together with Joyandeh, the "Buckalew Defendants"), BCAP Build America Association Corp. ("BCAP," and together with the Buckalew Defendants, the "Moving Defendants"), Josie Charles ("Charles"), and Tradewinz Management ("Tradewinz"). The Court refers to the Moving Defendants together with Charles and Tradewinz collectively as the "Defendants."

[2] Plaintiff also requested entry of default against defendants Charles, Tradewinz, and BCAP. (D.E. No. 13).

I.  **BACKGROUND**[3]

This matter arises out of a contract Plaintiff entered to purchase real property (the "Contract") located at 225 2nd Street, Newark, New Jersey (the "Property"). (Compl. ¶ 9). On December 14, 2020, Plaintiff executed the Contract as purchaser of the Property and on December 15, 2020, Charles executed the Contract as a purported representative of the seller, BCAP. (*Id.* ¶ 11; *see also* Ex. A to Compl. at 9 & 21[4]). BCAP is the sole "Seller" as stated in the Contract. (Ex. A to Compl. at 9). Under the Contract, Plaintiff agreed to purchase the Property for $375,000.00 and pay a deposit in the amount of $13,125.00 to the seller's attorney, BFC. (*Id.*). Plaintiff maintains BFC, through Joyandeh, acted as counsel to Charles and BCAP in connection with the Contract. (Compl. ¶ 13). BFC also appears to have collected the entirety of Plaintiff's deposit of $13,125.00. (*Id.* ¶¶ 15–16). Pursuant to the Contract, Plaintiff agreed that $4,000.00 of the deposit would be non-refundable and credited against the purchase price; the balance of the deposit (totaling $9,125.00) would be held in escrow by the seller's attorney—i.e., BFC— "in an Attorney Escrow Account until closing of title or as otherwise provided for in th[e] Contract." (Ex. A to Compl. at 9). The Contract provided that a dwelling would be constructed on the Property pursuant to plans and specifications appended as Schedule A to the Contract and further provided BCAP certain discretion regarding substitution of materials, design changes, color selections, and standard item options. (*Id.* at 10). Closing was set to occur 120 days after Contract execution. (*Id.* at 11).

Joyandeh allegedly prepared the Contract and "played a significant role in drafting,

---

[3]  The factual background is taken from the allegations in the Complaint. For purposes of the instant motions, the Court accepts the factual allegations as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[4]  All pin citations to the Complaint and exhibits attached thereto are to the page numbers automatically generated by the Court's CM/ECF case management system.

2

interpreting, and enforcing the Contract of sale." (*Id.* ¶¶ 10 & 14). Plaintiff asserts she proceeded *pro se* at all relevant times and thus did not have legal representation. (*Id.* ¶ 12). Plaintiff also claims BFC, "by and through Joyandeh, drafted and interpreted the [C]ontract for [her], lending credibility to its accuracy and validity." (*Id.* ¶ 14).

Although the Contract was executed in mid-December 2020, emails attached to the Complaint reflect that Plaintiff did not deposit the total amount of $13,125.00 with BFC until early 2021. (Ex. D to Compl. (Jan. 3, 2021 email chain from BFC to Plaintiff requesting remainder of deposit) at 42). After Plaintiff tendered the full deposit to BFC, BCAP allegedly delayed its performance under the Contract. (Compl. ¶ 16). As best as the Court can glean from the allegations, during this period of purported delay, Charles had been communicating with Plaintiff regarding remodeling and/or construction of the Property, "including but not limited to its zoning and flooring approvals," which appeared in Charles's name "on various applications regarding the Property to City Hall." (*Id.* ¶¶ 17–18). Plaintiff maintains that during the period of purported delay, the Property's value increased and BFC prevented her "from accessing her deposit for investment purposes." (*Id.* ¶¶ 19–20). In addition, during the same period, Charles allegedly attempted to negotiate a new and higher sale price for the Property[5] and tried to unilaterally terminate the Contract, stating that he had no obligation to perform under the Contract. (*Id.* ¶¶ 20–22).

On or about March 1, 2023, BFC, through Joyandeh, allegedly informed Plaintiff by regular mail and email that it had become aware of "a potential fraud involving Josie Charles and BCAP," such that Plaintiff's ability to purchase the Property may be impacted. (*Id.* ¶ 23).

---

[5] Plaintiff states she consistently refused Charles's attempt to increase the Property's sale price. (Compl. ¶ 20).

Specifically, BFC informed Plaintiff that Charles had "misrepresented his authority to act on behalf of BCAP." (*Id.*).[6] Plaintiff alleges BFC fabricated its claim that Charles misrepresented his authority to act on BCAP's behalf "for the purpose of deceiving and confusing [Plaintiff] regarding her rights to the terms of the Contract of Sale." (*Id.* ¶ 26). Further, as best as the Court can ascertain, Plaintiff asserts Charles's alleged misrepresentations were "never reported to an authority for criminal investigation," which she claims "would have been proper under the circumstance." (*Id.*). Although it is not explicitly alleged, it appears that in light of Charles's alleged misrepresentations, Plaintiff never closed on the Property despite her request to BFC for specific performance under the Contract. (*See id.* ¶ 27).

As a result of the foregoing, on November 30, 2023, Plaintiff filed the instant Complaint broadly alleging Defendants engaged in a conspiracy to injure Plaintiff. (*Id.* ¶ 28). In addition, Plaintiff notes on or about September 14, 2023, in furtherance of the conspiracy, BFC "filed an interpleader action in state court seeking protection from liabilities and damages . . . i[n] an effort to advance the [D]efendants' scheme to defraud and harm [her]." (*Id.* ¶ 29).[7] Plaintiff raises eight

---

[6] Plaintiff further alleges, for example, that BCAP's most recent Certificate of Formation does not list Charles as one of three trustees of BCAP, while Charles allegedly held himself out as BCAP's *only* trustee. (Compl. ¶ 25).

[7] Although Plaintiff references the interpleader action in her Complaint, and the Buckalew Defendants likewise refer to the interpleader action in their motion papers, neither party attached the state court documents to their filings. However, in deciding the instant motions, this Court may judicially notice the state court documents as matters of public record that are incorporated by reference in the Complaint. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). Accordingly, the Court independently reviewed the state court docket as relevant to the instant motions.

By way of brief background, and relevant here, it appears BFC filed an interpleader action in state court seeking to transfer Plaintiff's deposit to the Superior Court after it allegedly terminated its attorney-client relationship with Charles and BCAP. *See Buckalew Frizzell & Crevina LLP v.Ojo, et al.*, New Jersey Superior Court, Bergen County, Chancery Division, Docket No. BER-C-000184-23, Complaint ¶¶ 10–12 (Sept. 13, 2023). Prior to filing the interpleader action, BFC, with the consent of Charles and BCAP, attempted to remit Plaintiff's deposit directly to her, but Plaintiff allegedly did not respond to two of BFC's requests for authorization to return her deposit. *Id.* ¶¶ 15–19.

4

counts in the Complaint, including: (i) "conspiracy to fraudulently terminate Contract of Sale" (Count I); (ii) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. (Count II); (iii) violations of "mail and wire fraud statutes," 18 U.S.C. §§ 1341 & 1343 (Count III); (iv) unjust enrichment and fraudulent misrepresentations (Count IV); (v) breach of contract (Count V); (vi) "fraud and deceit" (Count VI); (vii) violation of New Jersey's RICO statute, N.J. Stat. Ann. § 2C:41-2(c) (Count VII); and (viii) negligence (Count VIII).[8] (Compl. ¶¶ 31–63). Plaintiff seeks a judgment in her favor on all counts, including: (i) damages consisting of her "earnest money deposit, the increased [P]roperty value, consequential damages and pre- and post-judgment interest"; (ii) an "injunction preventing Defendants from terminating or rescinding the Contract"; (iii) "injunctive relief, specifically the specific performance of the Contract of Sale"; and (iv) monetary compensation, punitive damages, attorneys' fees and costs, and other such relief as deemed just and equitable. (Compl. at 7).

On February 8, 2024, Plaintiff filed a document from an individual named "Kofi Afriyie," declaring that he/she "served" a copy of the summons and Complaint on the Defendants by "postal mail and/or via email." (D.E. No. 7). An exhibit attached to this filing includes six certified mail receipts addressed to Defendants. (D.E. No. 7-1).

On March 11, 2024, the Buckalew Defendants filed a motion to dismiss the Complaint. (D.E. No. 10; D.E. No. 10-1 ("Buckalew Mov. Br.")). Plaintiff opposed (D.E. No. 11 ("Opp. to Buckalew MTD"), the Buckalew Defendants replied (D.E. No. 17), and Plaintiff filed a sur-reply without leave of Court, which nonetheless will be considered (D.E. No. 18).

In the interim, Plaintiff requested entry of default against defendants Charles, Tradewinz, and BCAP pursuant to Federal Rule of Civil Procedure 55(a). (D.E. No. 13). The Clerk of Court

---

[8] Counts VI, VII, and VIII contain an identical header entitled "fraud and deceit," however the specific allegations contained therein reflect different claims, as set forth above. (Compl. ¶¶ 47–62).

5

has not entered default against any defendant. Plaintiff also filed an "emergency motion for a preliminary injunction and lis pendens." (D.E. No. 14). In response, the Court issued a Text Order directing Plaintiff to file a brief establishing "the elements the Court must consider when deciding a preliminary injunction." (D.E. No. 19). Thereafter, Plaintiff filed a renewed motion for preliminary injunctive relief. (D.E. No. 22). BCAP responded (D.E. No. 24) and Plaintiff replied (D.E. No. 25).

On June 7, 2024, BCAP filed a motion to dismiss. (D.E. No. 27; D.E. No. 27-1 ("BCAP Mov. Br.")). Plaintiff opposed (D.E. No. 28 ("Opp. to BCAP MTD")) and BCAP replied (D.E. No. 29). As of the date of this Opinion, neither Charles nor Tradewinz have appeared or responded to the Complaint, and accordingly they are not parties to the instant motions.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that a pleader is entitled to relief," and "a demand for the relief sought, which may include relief in the alternative or different types of relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and quotations omitted).

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570). A claim has facial

6

plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (internal citation omitted). Furthermore, in ruling on the present motion, the Court "must construe [Plaintiff's] complaint liberally as [s]he is proceeding pro se." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

When a motion to dismiss involves an action for fraud, a plaintiff may not rely merely on conclusory statements, but must instead indicate at the very least who made the material misrepresentation giving rise to the claim and what specific representations were made to comply with Federal Rule of Civil Procedure 9(b). *South Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 380 (D.N.J. 2007); *see also Grant v. Turner*, No. 09-2381, 2010 WL 4004719, at *2 (D.N.J. Oct. 12, 2010) (applying heightened pleading standard to federal RICO claim and state-

7

law fraud claims). To satisfy Rule 9(b), a plaintiff "must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004). "To place the defendant on notice of the precise misconduct with which it is charged, a plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation, and must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 221 (3d Cir. 2016) (cleaned up).

### B. Motion for Preliminary Injunction

A district court may issue injunctive relief in the form of a temporary restraining order or a preliminary injunction. *See* Fed. R. Civ. P. 65(a)(1) & (b)(1). A temporary restraining order may be issued without notice to the adverse party but usually expires after fourteen days. Fed. R. Civ. P. 65(b)(1)–(2). A preliminary injunction may issue only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). The grant of injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989).

In addition to the basic requirement of exigency, courts consider four factors in deciding whether a temporary restraining order or other injunctive relief should issue: "(1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Ace Am. Ins. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 730–31 (3d Cir. 2009) (citing *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). A party must produce sufficient evidence of all four factors before

granting injunctive relief. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).[9]

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Before addressing the Moving Defendants' motions to dismiss, the Court *sua sponte* addresses a preliminary issue related to Plaintiff's request to recoup her "earnest money deposit." (*See* Compl. at 7). As explained below, under the *Rooker-Feldman* doctrine, the Court's Opinion herein is limited to assessing Plaintiff's claims for damages **beyond** her deposit.

"Under the *Rooker–Feldman* doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006). The Supreme Court has emphasized that the scope of this doctrine is narrow, and that it applies only to "'cases brought by [i] state-court losers [ii] complaining of injuries caused by state-court judgments [iii] rendered before the district court proceedings commenced and [iv] inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

As noted above, in the state court interpleader action, BFC alleged that it attempted to obtain consent from Charles, BCAP, and Plaintiff to return Plaintiff's $13,125.00 deposit directly to her. *Buckalew Frizzell & Crevina LLP v. Ojo, et al.*, New Jersey Superior Court, Bergen County, Chancery Division, Docket No. BER-C-000184-23, Complaint ¶¶ 15–19 (Sept. 13, 2023).

---

[9] In addition, for a TRO to issue, the movant must provide "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard." Fed. R. Civ. P. 65(b)(1)(A); *see also* L. Civ. R. 65.1 (providing that "[n]o order to show cause to bring on a matter for hearing will be granted except on a clear and specific showing by affidavit, other document complying with 28 U.S.C. § 1746 or verified pleading of good and sufficient reasons why a procedure other than by notice of motion is necessary").

BFC alleged Charles and BCAP's attorney provided written consent authorizing return of the deposit to Plaintiff. *Id.* ¶ 16. Plaintiff, however, allegedly failed to respond to two letters from BFC seeking Plaintiff's authorization to return the $13,125.00 deposit to her. *Id.* ¶¶ 17–19. As a result, BFC filed the state court interpleader action against Plaintiff, Charles, and BCAP seeking to deposit the disputed funds totaling $13,125.00 from its attorney trust account into the state court. *Id.* ¶ 25(a)–(g); (*see also* Buckalew Mov. Br. at 4 n.2).

On January 5, 2024, in two separate orders, the Superior Court denied Plaintiff's motion to dismiss and granted BFC's motion for summary judgment, which ordered BFC to deposit the sum of $13,125.00 into the Superior Court of New Jersey. *Buckalew Frizzell & Crevina LLP v. Ojo, et al.*, New Jersey Superior Court, Bergen County, Chancery Division, Docket No. BER-C-000184-23, Court Orders (Jan. 5, 2024). Thus, if Plaintiff succeeds in this action for recovery of her $13,125.00 deposit, it would require this Court to interfere with the January 5, 2024 order from the Superior Court granting BFC's motion for summary judgment and requiring BFC to deposit the disputed funds into the Superior Court of New Jersey. As such, Plaintiff's request for return of her deposit is "precisely the kind of action that the *Rooker-Feldman* doctrine is designed to preclude." *See, e.g.*, *Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream*, 317 F. App'x 263, 266 (3d Cir. 2009).

Accordingly, the Court lacks subject matter jurisdiction to review any aspect of Plaintiff's Complaint which seeks to recover her deposited funds. Thus, the Court will assess Plaintiff's federal claims to the extent they do not implicate damages consisting of her $13,125.00 deposit.

### B. The Moving Defendants' Motions to Dismiss Plaintiff's Complaint

#### 1. Alleged Violations of Mail and Wire Fraud Statutes (Count III)

First, the Court addresses the Moving Defendants' motions to dismiss Count III, which purports to raise separate claims for Defendants' alleged violations of 18 U.S.C. §§ 1341 and 1343

10

for their "fraudulent and deceptive actions . . . by using mail and wire communications to further their fraudulent scheme." (Compl. ¶ 40). The Buckalew Defendants and BCAP maintain Plaintiff cannot sustain claims pursuant to 18 U.S.C. §§ 1341 and 1343 because as federal criminal statutes, they do not provide Plaintiff with private rights of action. (Buckalew Mov. Br. at 13; BCAP Mov. Br. at 13). In opposition, Plaintiff asserts, contrary to a liberal reading of her Complaint, that she does not intend to raise independent causes of action under the mail and wire fraud statutes, but rather "properly alleges violations of these statutes as predicate acts for her RICO claims." (Opp. to Buckalew MTD at 4–5; *see also* Opp. to BCAP MTD at 2).

To the extent Plaintiff initially intended to raise separate claims for mail and wire fraud pursuant to federal criminal statutes, 18 U.S.C. §§ 1341 and 1343, these claims cannot survive as a matter of law because they do not provide any private rights of action. *See Shahin v. Del. Fed. Credit Union*, 602 F. App'x 50, 53 n.3 (3d Cir. 2015) ("Federal criminal statutes, such as 18 U.S.C. § 1341, do not provide a private cause of action."); *Obianyo v. Tennessee*, 518 F. App'x 71, 72 (3d Cir. 2013) ("criminal statutes such as 18 U.S.C. § 1343, which criminalizes wire fraud . . . provide no private right of action"); *Jones v. TD Bank*, 468 F. App'x 93, 94 (3d Cir. 2012) ("To the extent that Jones attempted to sue under the Federal Mail Fraud statute, 18 U.S.C. § 1341, he lacked a private right of action to do so."); *Addlespurger v. Corbett*, 461 F. App'x 82 (3d Cir. 2012) ("[T]here is no private cause of action for a violation of the federal mail and wire fraud statutes.").

Accordingly, these claims, subsumed together under Count III—separate and apart from Plaintiff's RICO claim—are **DISMISSED** *with prejudice*. *See Farrell-Scott v. Comm. of*

11

*Managers of Llewellyn Park*, No. 22-0558, 2024 WL 2549469, at *2 (D.N.J. Apr. 22, 2024); *Williamson v. Michals*, No. 12-4548, 2013 WL 4509976, at *3 (D.N.J. Aug. 23, 2013).

### 2. Alleged Violation Under The RICO Act (Count II)

Next, the Court addresses the Moving Defendants' motions to dismiss Count II brought under the federal RICO Act. The federal RICO statute provides for civil damages for "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." *Tabas v. Tabas*, 47 F.3d 1280, 1289–90 (3d Cir. 1995) (quoting 18 U.S.C. § 1964(c)). To state a RICO claim under 18 U.S.C. § 1962(c), "a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Marina Dist. Dev. Co. v. Ivey*, 216 F. Supp. 3d 426, 435 (D.N.J. 2016) (citing *Lum*, 361 F.3d at 223). Racketeering activity must be either a specified federal offense "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . . chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). To be subject to liability, a defendant "must agree to commission of two or more racketeering acts, and . . . must adopt the goal of furthering or facilitating the criminal endeavor." *Ivey*, 216 F. Supp. 3d at 436 (first quoting *United States v. Phillips*, 874 F.2d 123, 127 n.4 (3d Cir. 1989); and then quoting *Smith v. Berg*, 247 F.3d 532, 537 (3d Cir. 2001)). The Moving Defendants argue Plaintiff has failed to plead a claim under the RICO Act. (Buckalew Mov. Br. at 6–10; BCAP Mov. Br. at 18–24).

The Court agrees Plaintiff's allegations fall short of a federal RICO claim pursuant to 18 U.S.C. § 1962(a), (b), or (c). ***First***, Plaintiff has not sufficiently plead that the Defendants engaged in "racketeering activity," a required part of any subsection of the offense.[10] The Court construes

---

[10] Section 1962(a) provides "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from ***a pattern of racketeering activity*** or through collection of an unlawful debt in which such person

12

*pro se* Plaintiff's Compliant broadly as alleging "racketeering activity" based on Defendants' alleged misrepresentations as well as the predicate offenses of mail fraud, *see* 18 U.S.C. § 1341, and wire fraud, *see* 18 U.S.C. § 1343. Throughout her Complaint, Plaintiff makes vague, conclusory assertions regarding Defendants' alleged fraudulent misrepresentations regarding the Contract and Plaintiff's deposit. (*See, e.g.*, Compl. ¶¶ 50–52). Although the Court is sympathetic to the apparent fall-out Plaintiff claims to have experienced, she cannot establish a pattern of racketeering activity without more detailed factual allegations regarding Defendants' purported misrepresentations, including the person(s) who made the alleged misrepresentations, when the alleged misrepresentations were made, and the method in which the alleged misrepresentations were made. Plaintiff's general assertions that one or more Defendants sent her fraudulent communications via mail and wire in furtherance of a scheme to prevent enforcement of the Contract, (*see* Opp. to Buckalew MTD at 3–4 (citing Compl. ¶¶ 10 & 15); *see also* Opp. to BCAP MTD at 4), do not suffice for purposes of pleading "racketeering activity" as defined in 18 U.S.C. § 1961(1).[11]

Accordingly, for this reason alone, Plaintiff fails to state a claim under the federal RICO Act. *See, e.g.*, *Nastasi v. Ravolli*, No. 22-6191, 2023 WL 8271798, at *4 (D.N.J. Nov. 30, 2023)

---

has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." (emphasis added).

Section 1962(b) provides "[i]t shall be unlawful for any person through ***a pattern of racketeering activity*** or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." (emphasis added).

Section 1962(c) provides "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through ***a pattern of racketeering activity*** or collection of unlawful debt." (emphasis added).

[11] Plaintiff has not alleged or argued that Defendants engaged in other defined "racketeering activity" such as "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . . chargeable under State law and punishable by imprisonment for more than one year." *See* 18 U.S.C. § 1961(1).

("Without more detailed factual allegations concerning the mortgage and how the purported fraudulent scheme worked, Plaintiff cannot establish a pattern of racketeering activity. Thus, the Complaint fails to satisfy the requisite elements of a pattern of racketeering activity.").

***Second***, Plaintiff has not alleged a coherent enterprise among the Defendants. The RICO Act defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated although not a legal entity." 18 U.S.C. § 1961(4). Therefore, an "enterprise" may take the form of either a formal legal entity or an informal association-in-fact. *Chey v. LaBruno*, 608 F. Supp. 3d 161, 184 (D.N.J. 2022) (citing *United States v. Turkette*, 452 U.S. 576 581–82 (1981)). The Supreme Court has held that an association-in-fact enterprise must have, at minimum, the following features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Here, Plaintiff appears to allege an informal association-in-fact enterprise among the Defendants. (*See* Opp. to BCAP MTD at 4 (conceding that "[t]he Complaint alleges BCAP and the other defendants associated together to defraud [Plaintiff] stating an association-in-fact")). Based on the present allegations, however, Plaintiff fails to connect the Buckalew Defendants' limited involvement in collecting Plaintiff's deposit and placing it in an escrow account—as Plaintiff agreed to in the Contract—to an alleged enterprise with the other defendants.[12] In addition, based on the allegations, including Charles's alleged misrepresentation of his authority to act on BCAP's behalf, it remains unclear whether BCAP actively participated in any of the events alleged in the Complaint. Finally, Plaintiff's allegations and arguments in opposition—i.e.,

---

[12] Further, Plaintiff concedes BFC informed her of its discovery that Charles misrepresented his authority to act on BCAP's behalf. (Compl. ¶ 23). This allegation, together with the allegations contained in the Buckalew Defendants' state court interpleader action, negate the notion that they participated in an enterprise with the remaining defendants.

14

that the Defendants "associated together for the common purpose of deceiving Plaintiff and preventing her from enforcing a valid contract for the sale of real property" (Opp. to Buckalew MTD at 3; *see also* Opp. to BCAP MTD at 4)—are conclusory statements that fall short of establishing an association-in-fact enterprise. Thus, for these additional reasons, Plaintiff fails to plead a claim under the federal RICO Act. *See, e.g.*, *Nastasi*, 2023 WL 8271798, at *3; *Chey*, 608 F. Supp. 3d at 185 (dismissing RICO claim for failure to allege an association-in-fact based on plaintiff's conclusory allegation that the "[d]efendants have and are working together such as to comprise an enterprise").

***Third***, to the extent the Complaint purports to assert a RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d), this claim also fails because Plaintiff has not adequately alleged a RICO claim under 18 U.S.C. §§ 1962(a), (b), or (c). *See Aguilar v. Ken's Marine & Oil Serv., Inc.*, No. 14-6735, 2017 WL 2312358, at *3 n.4 (D.N.J. May 25, 2017) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under [S]ection 1962(d) based on a conspiracy to violate the other subsections of [S]ection 1962 necessarily must fail if the substantive claims are themselves deficient.")).

Accordingly, for the reasons set forth above, Count II of the Complaint is **DISMISSED** *without prejudice*.

### 3. Remaining State Law Claims (Counts I & IV–VIII)

Having dismissed all federal claims alleged in the Complaint, to the extent Plaintiff seeks damages beyond her deposit of $13,125.00 in her remaining claims arising under state law, the Court declines to exercise supplemental jurisdiction over her state law claims. Specifically, Plaintiff's remaining state law claims include "conspiracy to fraudulently terminate" the Contract (Count I), unjust enrichment and fraudulent misrepresentations (Count IV), breach of contract

(Count V), "fraud and deceit," including fraudulent misrepresentations (Count VI), New Jersey RICO claim (Count VII), and negligence (Count VIII).[13] *See generally* Compl.; *see also* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("This Court has recognized that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis in original))). Therefore, Counts I & IV–VIII of the Complaint are **DISMISSED** *without prejudice*.

### C. Plaintiff's Motion For A Preliminary Injunction

Plaintiff's motion for a preliminary injunction seeks to enjoin Charles, Tradewinz, and BCAP from "selling, transferring, or marketing the [P]roperty" as well as a "notice of *lis pendens* against the Property." (D.E. No. 22 at 2). Because the Court has dismissed Plaintiff's claims arising under federal law for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, her request for preliminary injunctive relief is also denied. *See Chey*, 608 F. Supp. 3d at 185 (declining to address request for preliminary and permanent injunctive relief following dismissal of plaintiff's federal claims *without prejudice* for failure to state a claim and dismissal of state law claims on jurisdictional grounds); *see also Patelunas v. United States*, No. 23-2167, 2024 WL 54120, at *6 (M.D. Pa. Jan. 4, 2024) (dismissing motion for preliminary injunctive relief

---

[13] The Court also lacks original jurisdiction over these remaining state-law claims because "[f]or diversity jurisdiction to lie, there must be 'complete diversity' amongst the parties;" and complete diversity "means that the plaintiff cannot be a citizen of the same state as any of the defendants." *See Fink v. Kirchner*, 731 F. App'x 157, 159 n.4 (3d Cir. 2018). Here, Plaintiff maintains that she is a citizen of New Jersey and that all Defendants reside or have a principal place of business in New Jersey. (*See* Compl. ¶¶ 3–8). Thus, the Court does not have diversity jurisdiction over these claims.

as moot following dismissal of complaint for failure to state a claim); *Hollis-Arrington v. PHH Mortg. Corp.*, No. 05-2556, 2005 WL 3077853, at *12 (D.N.J. Nov. 15, 2005) ("Because the Court is dismissing [p]laintiffs' [c]omplaint in its entirety, [p]laintiff has clearly not been able to show a probability of success on the merits. Thus, the Court denies [p]laintiffs' Motion for a Preliminary Injunction."), *aff'd*, 205 F. App'x 48 (3d Cir. 2006). Accordingly, Plaintiff's motion for a preliminary injunction is **DENIED**.

### D. Plaintiff's Request for Entry of Default as to Charles and Tradewinz[14]

Plaintiff's request for entry of default as to defendants Charles and Tradewinz pursuant to Federal Rule of Civil Procedure 55(a) (D.E. No. 13) is denied *without prejudice* for failure to effectuate proper service in accordance with Federal Rules of Civil Procedure 4(e), 4(h), or New Jersey Court Rules 4:4-4(a)(1), (a)(6). Notably, service by registered or certified mail with return receipt requested and, simultaneously, by ordinary mail, is permissible **only if** "it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) [of New Jersey Court Rule 4:4-4]." *See* N.J. Ct. R. 4:4-4(b)(1) & (b)(1)(C).

Here, Plaintiff did not submit an affidavit in compliance with New Jersey Court Rule 4:4-5(b) detailing her diligent efforts to serve Charles or Tradewinz pursuant to New Jersey Court Rule 4:4-4(a); nor is it apparent whether Plaintiff also served Charles or Tradewinz via ordinary mail—as opposed to email—as required by New Jersey Court Rule 4:4-4(b)(1)(C). Accordingly, entry of default pursuant to Federal Rule of Civil Procedure 55(a) against Charles and Tradewinz is premature and improper at this juncture. As noted below and in the Court's accompanying Order,

---

[14] Plaintiff also requested entry of default as to BCAP, who has since appeared in this action by way of its motion to dismiss the Complaint. (*See* D.E. No. 13). As noted above, Plaintiff opposed BCAP's motion to dismiss and does not appear to contest the timing of BCAP's appearance.

Plaintiff may cure the deficiencies outlined herein in an amended complaint within thirty (30) days. Should Plaintiff choose to amend her pleading, she shall serve the Defendants in accordance with the applicable federal, state, and local rules.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Moving Defendants' motions to dismiss (D.E. Nos. 10 & 27) and **DENIES** Plaintiff's motion for a preliminary injunction (D.E. No. 22). Counts I–II and Counts IV–VIII are **DISMISSED** *without prejudice* and Count III is **DISMISSED** *with prejudice*. Plaintiff may file an amended complaint within thirty (30) days of the entry of the Order that accompanies this Opinion.

Dated: December 19, 2024                                           *s/ Esther Salas*
                                                                                             **Esther Salas, U.S.D.J.**